UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LONNIE LEE MANN,

        Petitioner,                    Case No. 1:18-cv-1162

v.                                                  Honorable Robert J. Jonker

TONY TRIERWEILER,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Lonnie Lee Mann is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. On May 6, 2013, Petitioner pleaded *nolo contendere* in the Calhoun County Circuit Court to one count of first-degree home invasion in violation of Mich. Comp. Laws § 750.1101(2) and to his status as a habitual offender-third offense, Mich. Comp. Laws § 769.11. On June 3, 2013, the court sentenced Petitioner to a prison term of 15 to 40 years, to be served consecutively to a 5 to 15-year term of imprisonment for a 2006 breaking and entering conviction—a crime for which he was out on parole when he committed this home invasion.

On August 31, 2018, Petitioner filed his habeas corpus petition raising six grounds for relief, as follows:

    I.    Petitioner was denied his Sixth Amendment right to defend against the charges and due process of law when the prosecution failed to timely provide notice of their intent to enhance Petitioner's sentence pursuant to the habitual offender statute.

> II. The Petitioner was denied his constitutional right to effective assistance of counsel where his trial attorney and appellate attorney failed to object to the erroneous scoring of PRV 1, PRV 2, and PRV 5, which in effect resulted in an invalid sentence based upon inaccurate information.
>
> III. [Petitioner] was denied [his] constitutional right to effective assistance of appellate counsel and his right to due process as guaranteed by the Fourteenth Amendment.
>
> IV. [Petitioner] submits that good cause and actual prejudice has been presented for his failure to bring the issues raised in his post-conviction appellate proceedings due to ineffective assistance of appellate counsel.
>
> V. Judicial fact-finding at sentencing based on less than proof beyond a reasonable doubt violated [Petitioner's] Fifth, Sixth, and Fourteenth Amendment rights.
>
> VI. Trial counsel rendered ineffective assistance by failing to object to OV-7, where the defendants did not engage in "excessive brutality" but instead reacted out of self-preservation when the complainant began shooting at them.

(Pet., ECF No. 1, PageID.5-15.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are meritless.  Alternatively, Respondent invites the Court to decline to review the petition under the concurrent sentencing doctrine.  Upon review of the petition and record in this case and the petition and record in *Mann v. Trierweiler*, No. 1:18-cv-1072 (W.D. Mich.), I recommend that the Court decline to review this petition under the concurrent sentencing doctrine.

## Discussion

### I. Factual allegations

Petitioner's habeas issues relate to pretrial proceedings and sentencing matters.  Therefore, the facts relating to Petitioner's crime are not at issue.  At his plea hearing, Petitioner's counsel read a synopsis of the facts underlying Petitioner's plea.  (Plea Hr'g Tr., ECF No. 9-9, PageID.157-159.)  Counsel derived the synopsis from the police report and the preliminary examination transcript.  (*Id.*)  Those facts are as follows:

> On or about October 1st of 2012 in the city of Battle Creek, Calhoun County, . . . at a residence located at . . . 15 Morgan . . . Road, the residents . . . came home, they found two individuals in the residence, one of them being a Troy Wilkins. The husband pull out . . . a four-ten gauge shotgun and shot off a round at the direction of the two individuals, hitting Mr. Wilkins, who was then later collected and apprehended at the scene by the police.
>
> The other individual took off. A short distance later, . . . Mr. Mann was made contact with by the police. He attempted to run from the police, he was apprehended.
>
> A search in the . . . general area located a backpack. In that backpack were found several items, which I believe the owner of the property. . . identified as being . . . similar to items that he possessed and had not given permission for anyone to enter his residence. And the doors had otherwise been secured when he and his wife had left.
>
> Further, at the preliminary examination, Mr. Wilkins, having already pled without benefit of an agreement, apparently, volunteered and offered to testify against Mr. Mann, and did so at the preliminary examination, identifying him as his co-defendant and the other individual who was involved in the entry at—at 15 Morgan Road.

(*Id.*)

Petitioner's prosecution in Calhoun County ran parallel to a prosecution in Barry County for a different home invasion that Petitioner was accused of perpetrating a couple of weeks before the October 1 offense. The Calhoun County plea deal did not include any sentencing agreement. The parties referenced a minimum sentence range of 117 to 240 months based on a cursory sentencing guidelines calculation, so Petitioner was aware of that range as a worst-case scenario. Petitioner was well aware that he could be sentenced to any minimum sentence within that range. On June 3, 2013, the court imposed a sentence of 15 to 40 years.

The Calhoun County sentence was then used as the basis for a plea deal in Barry County. Petitioner entered his plea in Barry County on June 6, 2013. The prosecutor and defense counsel in Barry County and the prosecutor and defense counsel in Calhoun County agreed that the sentences would run concurrently. Apparently, because the sentences would be concurrent and

the guidelines scoring was likely to be the same in Barry County, the parties in Barry County agreed to a 15-year sentence.

On July 11, 2013, the Barry County court imposed a sentence of 15 to 40 years. Because Petitioner was on parole when he committed the home invasion offenses, he received no credit on the home invasion sentences for time spent in jail prior to sentencing. Moreover, because the Calhoun County sentence was imposed 38 days before the Barry County sentence, the Calhoun County minimum and maximum will expire 38 days before the Barry County minimum and maximum.

At the Barry County sentencing, Petitioner attempted to convince the trial court that the Calhoun County plea was based on a promise that Petitioner's minimum sentence would be 111 months. Petitioner claimed further that the Barry County prosecutor and defense agreed that the Barry County sentence would be the same as the Calhoun County sentence. Petitioner's statements—that his minimum sentence was supposed to be 111 months and that the Barry County and Calhoun County sentences were supposed to be the same—find no support in the record of the Calhoun County prosecution. (Plea Hr'g Tr., ECF No. 9-9; Sentencing Hr'g Tr., ECF No. 9-10.)

With the assistance of appointed appellate counsel, Petitioner sought leave to appeal raising two issues: trial counsel was ineffective for failing to challenge the scoring of OV-7 (habeas issue VI); and the trial court's sentence was impermissibly based on judge-found facts in violation of the Sixth Amendment (habeas issue V). By order entered August 26, 2014, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 9-14, PageID.220.)

Petitioner then sought leave to appeal in the Michigan Supreme Court raising the same issue he raised in the court of appeals. The supreme court held Petitioner's application in

4

abeyance pending a decision in *People v. Lockridge*, No. 149073 (Mich.). (Mich. Order, ECF No. 9-15, PageID.380.) By order entered October 28, 2015, in lieu of granting leave to appeal, the court remanded the case to the trial court "to determine whether the court would have imposed a materially different sentence" if the sentencing guidelines were discretionary—which they were because of the decision in *Lockridge*—rather than mandatory. (Mich. Order, ECF No. 9-15, PageID.347.)

On March 14, 2016, Petitioner filed a notice of intent to forego the *Lockridge* remand after his counsel informed Petitioner that it was a possibility that the trial court would impose a longer minimum sentence upon resentencing. (Notice, ECF No. 9-11, PageID.172.) Petitioner then filed a pro per motion for relief from judgment raising the same issues he raises as issues I-IV in his habeas petition. (Mot. for Relief from J., ECF 9-12, PageID180.) The trial court denied the motion for lack of merit. (Calhoun Cty. Cir. Ct. Order, ECF No. 9-13, PageID.219.) Petitioner sought leave to appeal the trial court's order in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders dated September 12, 2017, and July 3, 2018, respectively. (Mich. Ct. App. Order, ECF No. 9-16, PageID.381; Mich. Order, ECF No. 9-17, PageID.416.) This timely petition followed.

With the exception of habeas issue VI, which is unique to the Calhoun County proceeding, Petitioner's direct appeals from the Barry County and Calhoun County convictions and sentences, attempts at post-judgment relief in the state courts in both cases, and his habeas petitions, are, for all intents and purposes, identical.

## II.    Concurrent sentence doctrine

The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the

5

challenged conviction is concurrent with an equal or longer sentence on a valid conviction. *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The doctrine has its origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943). In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand. *Williams*, 714 F.2d at 555. "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin*

*v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013).  In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences.  *Id*.

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge."  *Buffin,* 513 F. App'x at 448.  The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006).  The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996).  The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968).  *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals.  Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases.  The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience.  *Benton*, 395 U.S. at 791.  The *Benton* Court simply chose to not apply it in that case.  *Id*. at 792.  *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause.  Such slight or remote collateral consequences should not preclude application of the concurrent sentencing doctrine when jurisdictional and double jeopardy considerations are not at issue.  If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentencing doctrine.  Petitioner is serving a sentence for first-degree home invasion of 15 to 40 years imposed by the Calhoun County Circuit Court on June 3, 2013.  Petitioner is also serving concurrently a

7

sentence for first-degree home invasion of 15 to 40 imposed by the Barry County Circuit Court on July 11, 2013.  The present petition challenges only Petitioner's Calhoun County sentence.  Thus, even if the court were to vacate that conviction, the maximum relief available would be invalidation of that sentence, still leaving Petitioner with the 15 to 40-year sentence imposed 38 days later.  Release from prison would not be available even if the conviction and sentence challenged in this petition were vacated.

Moreover, the sorts of collateral consequences that counsel against application of the doctrine seem to be unlikely in Petitioner's case.  Petitioner has already worked himself up to the very peak of Michigan's habitual offender sentencing scheme.  Even if Petitioner's Calhoun County conviction is overturned he will remain in the habitual-offender, fourth-offense category—the highest category under Michigan's habitual offender enhanced sentencing scheme.  Mich. Comp. Laws § 769.12.  Petitioner's significant criminal history would rob this particular home invasion offense of any singular significance in the eyes of a subsequent parole board, jury, or pardoning authority.  Further, the stigma associated with Petitioner's criminal history is not likely to be meaningfully reduced if Petitioner's Calhoun County home invasion conviction were removed.  Critically, even those remote consequences are not really at issue here because Petitioner's challenges are not directed at the constitutionality of his conviction, they are directed at his sentence.

If the concurrent sentencing doctrine retains any vitality—and the Supreme Court and the Sixth Circuit Court of Appeals indicate that it does—this is a case where it should be applied.  Accordingly, I recommend that the Court exercise its discretion and decline to consider this habeas petition.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. The standard a petitioner must meet depends on whether the issues raised in the petition were denied on the merits or on procedural grounds.

Where the Court denies relief on substantive grounds, a certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The recommended application of the concurrent sentence doctrine is not a denial on substantive grounds. Accordingly, the Court will address the certificate of appealability issue as if the petition were resolved on procedural grounds.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Both showings must be made to warrant the grant of a certificate. *Id.* I find that reasonable jurists would not debate whether Petitioner will suffer collateral consequences that would preclude application of the concurrent sentencing doctrine. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the Court decline to exercise jurisdiction over the petition and that the habeas corpus petition be dismissed without prejudice. I further recommend that a certificate of appealability be denied.

Dated: September 30, 2019         /s/ Ray Kent
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).